**Electronically Filed
Intermediate Court of Appeals
28592
16-APR-2012
08:50 AM**

NO. 28592

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


HAWAIIAN ASSOCIATION OF SEVENTH-DAY ADVENTISTS,
a Hawaii Non-Profit Corporation,
Plaintiff-Appellant, Cross-Appellee,
v.
STACEY T.J. WONG, As Trustee of
the Eric A. Knudsen Trust,
Defendant-Appellee, Cross-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 03-1-0026)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Plaintiff-Appellant/Cross-Appellee Hawaiian Association of Seventh Day Adventists ("Association") appeals from the May 21, 2007 Amended Final Judgment of the Circuit Court of the Fifth Circuit[1] ("Circuit Court"), which resolved the claims between the Association and Defendant-Appellee/Cross-Appellant Stacey T.J. Wong ("Wong") as Trustee of the Eric A. Knudsen Trust ("EAK Trust"). Wong cross-appeals from the Amended Final Judgment.

On appeal, the Association claims that the Circuit Court (1) erred by denying the Association's July 28, 2005 motion for partial summary judgment with respect to Count I of the March 10, 2003 Complaint ("Complaint"), (2) abused its discretion by failing to issue findings of fact and conclusions of law regarding its interpretation of paragraph 16 of the parties' lease agreement ("Paragraph 16"), (3) failed to expressly exclude

_____

[1] The Honorable Kathleen N.A. Watanabe presided.

certain evidence, (4) erred by denying the Association's motion for reconsideration, and (5) should have granted the Association's August 25, 2005 motion for partial summary judgment on Counts I, II and IV of the April 1, 2003 Counterclaim ("Counterclaim").

In his cross-appeal, Wong argues that the Circuit Court erred (1) by granting the Association's August 10, 2005 motion for partial summary judgment on Count I of the Counterclaim because termination of the lease was warranted, (2) by granting the Association's August 10, 2005 motion for partial summary judgment on Counts II and III of the Counterclaim because Wong was entitled to damages for improper use of the subject property and the unjust revenues generated therefrom, (3) by denying Wong's August 17, 2005 motion for summary judgment based upon the Association's violation of the lease through its failure to comply with county and Land Use Commission conditions because the Association failed to start an agricultural work-study program and improperly rented cabins to the general public, and (4) by denying Wong's August 25, 2005 motion for partial summary judgment with respect to Count VI of the Complaint because the Association's claim for damages should have been struck. Finally, both the Association and Wong contest the Circuit Court's award of attorneys' fees and costs.

I.    BACKGROUND

A.    History and Use of the Property

The subject property is a parcel of approximately 197 acres of land situated in Kōloa, Kaua'i (the "Property"). The Property was originally owned by EAK Trust and the Augustus F. Knudsen Trust (jointly, "the Trusts"). In 1949, the Trusts leased the Property to Valdemar L'Orange Knudsen who, in turn, assigned the lease to Kahili Mountain Park, Inc. ("KMPI"), a company owned by several Knudsen family members. KMPI developed a commercial campground on the Property called Kahili Mountain Park ("Park"). The Park originally featured structures called "cabinettes," which were described as "cement slab[s] with . . . low surrounding wall[s], with . . . tent structure[s] over

2

[them.]" Based on its guests' recommendations, KMPI later built cabins, which featured electricity and private bathrooms. KMPI rented the cabins and cabinettes to the general public for vacation use.

In 1982, the Association and KMPI entered into an agreement whereby the Association would purchase all of KMPI's capital stock, including its leasehold interest in the Park. On December 31, 1984, the Association and the Trusts entered into a new sixty-year lease for the Property beginning on January 1, 1985 (the "Lease"). Paragraph 16 of the Lease prescribes the allowable uses for the Property:

> 16. <u>Use of Demised Premises</u>. The demised premises shall be used only for educational, recreation (including vacation residence for members and staff of Lessee's school and church), agricultural, health care and humanitarian uses. No dwellings shall be constructed or used on the demised premises except for faculty, administrative staff, students and employees. If Lessee ceases to use the demised premises for the above purposes, Lessor shall have the right to terminate this Lease.

The Association relocated a K-12 school ("School") to the Property and constructed some new structures, including houses for School faculty and staff and some additional cabins. The Association continued KMPI's practice of renting cabins to the general public with the rental income used to support the School. In 1995, EAK Trust acquired a 100% fee interest in the Property. The parties pointed to no evidence of any disagreement between the parties concerning the Association's cabin-rental program until approximately 2001.

In an April 11, 2001 letter to the Association ("April 11, 2001 Letter"), Wong, as trustee for the EAK Trust, stated, "I believe we are in agreement that the Adventists are in material default of the Kahili Adventist School/Mountain Park lease with respect to the Article 16."[2] The letter did not explain how the Association was in violation of the Lease. It did warn, however, that under the defeasance provision in

---

[2] The April 11, 2001 Letter explained that on August 28, 2000, Wong had been appointed as the Successor Trustee for the EAK Trust and that his responsibilities included "ensuring strict compliance with [EAK Trust's] leases."

Paragraph 19 of the Lease ("Paragraph 19"),[3] EAK Trust could pursue remedies including termination of the lease, eviction, and a suit for monetary damages and legal fees.

The April 11, 2001 Letter noted that the EAK Trust fully supported the Association's vision of establishing a wellness and conditioning center on the Property. Wong added that he was also interested in expanding the amenities available to the students of the School and guests of the Park to include a hot-springs bath, cold-plunge pool, weight/ cardiovascular equipment room, and facilities for aerobics, yoga and meditation classes.[4]

Wong proposed that the Association could "satisfy the past breach" by paying EAK Trust 10% of cabin-rental-related gross revenues, plus simple 10% interest, for the period from

---

[3]     Paragraph 19 provides, in relevant part:

> Defeasance. This demise is conditionally limited as follows:
>
> (1) If Lessee . . . (2) shall fail faithfully to observe or perform any of the covenants herein contained and on the part of Lessee to be observed and performed, and any such default shall continue for thirty (30) days after written notice thereof is given by Lessor . . . Lessor may at once enter into and upon the demised premises or any part thereof in the name of the whole and at Lessor's option terminate this Lease, or without necessity of physical entry cancel this Lease by mailing a written notice to Lessee at the last known address of Lessee, or at such other address of which Lessee has notified Lessor in writing prior thereto if receipt of said notice (of change of address) has been acknowledged in writing by Lessor, and thereupon take possession of said premises and all improvements thereon and become wholly vested with all rights, title and interest of Lessee therein, and may expel and remove from said premises Lessee, or those claiming under Lessee, and their effects, all without service of notice or resort to any legal process and without being deemed guilty of any trespass or becoming liable for any loss or damage which may be occasioned thereby, and without prejudice to any other remedy or right of action which Lessor may have for collection of arrears of rent or for other or preceding breach of covenant by Lessee, and in case of such termination of this Lease, Lessee shall be liable to Lessor for all losses and damages sustained by Lessor on account of Lessee's breach of said terms and covenants and/or conditions, and/or on account of the premises remaining unleased or being let for the remainder of the term hereby demised for a lesser rent than that herein reserved. . . .

[4]     Wong characterized his proposal as the continued operation of the Park, "but in a professional manner calculated to maximize revenues and service quality to its guests."

July 1, 1984 to November 30, 2000. Moving forward, Wong recommended that the Association prepare a detailed five-year business plan that would include proposed programs and improvements for both the School and the Park. If the plan was accepted, EAK Trust would enter into a new lease permitting the proposed commercial uses with the Association under which the Association would pay rent of 10% of gross non-School-related revenues.

On January 7, 2002, the Association submitted a letter and attached a document entitled "Phase I – Validation & Recommendation Research Report" prepared by Business Consulting Resources ("BCR Report").[5] According to the Association, it retained Business Consulting Resources for the project at Wong's recommendation.

In a letter dated January 15, 2002, Wong responded to the Association's January 7, 2002 letter and the BCR Report. Wong began by noting that he could "not begin to communicate . . . [his] disappointment." Wong asserted that the BCR Report "is not a five (5)-year business plan. It lacks the focus, integration and specific proposals found in a real business plan." Wong noted that the Association had never formally responded to an interim proposal that he had offered in October 2001 and said that, contrary to the Association's stated understanding, he had not agreed to forgive back percentage rent. Wong stated that he would no longer discuss or negotiate the matter, but allowed the Association to submit a final settlement proposal by February 18, 2002, at which point he would either accept or reject it.

The parties have directed us to no responsive communication in the record. On March 6, 2002, Wong sent a further letter on behalf of EAK Trust to the Association demanding that it cease commercial vacation rental operations on the Property by April 15, 2002 ("March 6, 2002 Letter"). Wong

---

[5] Among other things, the Association's January 7, 2002 letter took issue with Wong's proposal concerning "the past monetary claim," which, the letter contended was to have been "forgiven at the rate of 20% a year as milestones on a five-year business plan were achieved."

subsequently extended the deadline to October 31, 2002 to allow the Association to honor any reservations made prior to March 6, 2002.

B.    The Association's Complaint and Wong's Counterclaim

On March 10, 2003, the Association filed its Complaint. Among other things, the Association sought, in Count I, a declaratory judgment that "continued operation of 'Kahili Mountain Park' and vacation rental of the cabins . . . is permitted by the terms of the Lease" ("Count I of the Complaint"), and in Count VI, damages for Wong's wrongful demand that the Association halt its vacation rentals to the general public ("Count VI of the Complaint").

On April 1, 2003, Wong filed his Counterclaim in which he: (1) sought, in Count I, termination of the Lease based on his allegation that the Association was in violation of the terms and conditions of the Lease ("Count I of the Counterclaim"); (2) claimed, in Count II, that the Association breached its contract by conducting prohibited commercial operations on the Property by failing to comply with the conditions of the Special Permits issued for the use of the Property and by failing and refusing to pay rent to Wong for the prohibited commercial operations conducted on the Property ("Count II of the Counterclaim"); (3) claimed, in Count III, that by operating prohibited commercial operations on the Property, the Association had been unjustly enriched and should be disgorged of its profits ("Count III of the Counterclaim"); and (4) alleged, in Count IV, that under the Lease, the Association was obligated to defend and indemnify Wong for any loss or damage in connection with the Lease.

C.    Orders Granting Summary Judgment

The parties each filed multiple motions for partial summary judgment.  In sum, the Circuit Court granted summary judgment to Wong on Counts I, II, III, and IV of the Association's Complaint.  In addition, the Circuit Court granted summary judgment to the Association on Count VI of the Complaint despite the fact that the Association did not move for summary

judgment on that count. Finally, the Circuit Court granted the Association summary judgment on all counts of Wong's Counterclaim.

The Circuit Court did not state the grounds upon which it granted or denied each motion. The Association moved for clarification on the summary judgment orders pertaining to Count I of the Complaint and Count I of the Counterclaim and for reconsideration of the orders. At a November 8, 2005 hearing, the Circuit Court explained that it found the Lease to be unambiguous and that it, therefore, did not use any parol evidence in making its decisions. The Circuit Court stated that although cabin rentals were not permitted under the Lease, the violations were insufficient to terminate the Lease or had been timely cured. The Circuit Court denied the Association's motion for clarification of its prior summary judgment orders and the Association's motion for reconsideration of summary judgment.

D.    Attorneys' Fees and Costs

Paragraph 11 of the Lease provides:

> Lessee will pay to Lessor all costs and expenses, including reasonable attorney's fees incurred by Lessor in enforcing any of the covenants, terms and conditions in this Lease contained, in remedying any breach thereof, in collecting any delinquent rent, taxes or other charges hereunder payable by Lessee, in connection with any litigation (other than condemnation proceedings) commenced by or against Lessee to which Lessor shall without fault be made a party.

On December 1, 2005, Wong filed his motion for taxation of costs and award of attorney's fees. Wong sought costs in the amount of $68,040.38 and fees in the amount of $308,797.50. Wong's attorney submitted a declaration explaining that he had made a good-faith effort to exclude from the total any fees related to the Counterclaim.

On February 22, 2006 the Circuit Court entered an order granting Wong's motion for taxation of costs and award of attorney's fees ("Order Granting Fees and Costs"). The Circuit Court awarded Wong costs in the amount of $27,206.90 and fees in the amount of $60,270.00, for a total of $87,476.90. The Circuit Court did not explain how it arrived at the amount of fees or costs it awarded.

E.    Amended Final Judgment

On May 21, 2007, the Circuit Court entered the Amended Final Judgment: (1) in favor of Wong and against the Association on Counts I, II, III, and IV of the Complaint; (2) in favor of the Association and against Wong on Counts I, II, III and IV of the Counterclaim; (3) dismissing Count VI of the Complaint;[6/] (4) awarding Wong $87,476.90 in attorneys' fees and costs; and (5) dismissing all claims and counterclaims not specifically identified in the Amended Final Judgment.

II.   STANDARDS OF REVIEW

Summary Judgment

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo. Under the de novo standard, [the appellate court examines] the facts and answer[s] the question without being required to give any weight to the circuit court's answer to it." Haw. Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 457, 164 P.3d 696, 715 (2007) (internal quotation marks, citations, and brackets omitted).

Equitable Relief

"A declaratory judgment is a form of equitable relief." Kau v. City & Cnty. of Honolulu, 104 Hawai'i 468, 473, 92 P.3d 477, 482 (2004). The circuit court's decision granting or denying such equitable relief is reviewed for abuse of discretion. Id.; Ingledue v. Dyer, 85 Hawai'i 84, 91, 937 P.2d 925, 932 (App. 1997).

Contract Interpretation

> As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court. The determination whether a contract is ambiguous is likewise a question of law that is freely reviewable on appeal. These principles apply equally to appellate review of the construction and legal effect to be given a contractual agreement to arbitrate.

---

[6/]    The Circuit Court dismissed Count VI even though it had earlier granted summary judgment to the Association on that count. It is unclear why the Circuit Court dismissed Count VI, as no related stipulation by the parties or decision by the court appears in the record.

*Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 239, 921 P.2d 146, 159 (1996) (internal quotation marks and citations omitted).

### Motion for Reconsideration

> [T]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion. Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

*Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.*, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (quoting *Sousaris v. Miller*, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000)). The appellate court reviews a "trial court's ruling on a motion for reconsideration . . . under the abuse of discretion standard." *Ass'n of Apartment Owners of Wailea Elua*, 100 Hawai'i at 110, 58 P.3d at 621. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

### Awards of Attorneys' Fees and Costs

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." *Sierra Club v. Dep't of Transp.*, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (internal quotation marks, citations, and brackets omitted).

### Harmless Error

"No judgment, order or decree shall be reversed, amended or modified for any error or defect unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant." HAW. REV. STAT. § 641-2.

## III. DISCUSSION

### A. The Association's Points of Error

1. The Circuit Court erred in granting Wong summary judgment on Count I of the Complaint.

9

The Association contends in its first point of error that the Circuit Court erred in denying the Association's motion for summary judgment on Count I of the Complaint. Implicit in that, under the circumstances, is a claim that the Circuit Court also erred in granting summary judgment to Wong on that count. While we are unable to conclude on the record provided whether the Association is entitled to declaratory judgment, we are able to conclude that the Circuit Court erred in granting summary judgment to Wong on the legal basis that it stated.

The record is replete with evidence of cabin rentals on the Property over time and the intentions and opinions of various people connected with the Lease and the Property's operation. Nevertheless, as the Circuit Court found the Lease to be unambiguous and did not take parol evidence into account in reaching its decision, the issue before us is whether Paragraph 16 unambiguously permits or prohibits the vacation rental of cabins on the Property to members of the general public. Our review of the Circuit Court's grant of summary judgment on legal grounds is de novo. *Haw. Ventures*, 114 Hawai'i at 457, 164 P.3d at 715; *Brown*, 82 Hawai'i at 239, 921 P.2d at 159; *accord SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 861 (Minn. 2011) (when reviewing a trial court's grant of summary judgment on a claim for equitable relief, the standard of review is de novo if the trial court granted summary judgment on legal grounds).

Whether a contractual term is ambiguous is a pure question of law capable of judicial resolution. *Found. Int'l, Inc. v. E.T. Ige Constr., Inc.*, 102 Hawai'i 487, 496, 78 P.3d 23, 32 (2003). "[T]erms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." *Amfac, Inc.*, 74 Haw. at 108, 839 P.2d at 24 (quoting *Azer v. Myers*, 8 Haw. App. 86, 123, 793 P.2d 1189, 1212 (1990)) (internal quotation marks omitted). "A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning." *Airgo, Inc. v. Horizon Cargo Transp., Inc.*, 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983) (citing *Hennigan v. Chargers*

*Football Co.*, 431 F.2d 308, 314 (5th Cir. 1980)). "The court should look no further than the four corners of the document to determine whether an ambiguity exists." *Williams v. Aona*, 121 Hawai'i 1, 15, 210 P.3d 501, 515 (2009) (quoting *United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc.*, 113 Hawai'i 127, 140, 149 P.3d 495, 508 (2006)).

> a. The import of Paragraph 16's first sentence

The first sentence of Paragraph 16 does not authorize or exclude use of the Property by the Association or any particular class of individuals. The Association argues, and we agree, that Paragraph 16's parenthetical phrase "including vacation residence for members and staff of Lessee's school and church" does not prohibit the rental of cabins to the general public for vacation purposes. *See Lealaimatafao v. Woodward-Clyde Consultants*, 75 Haw. 544, 557, 867 P.2d 220, 226 (1994) (the word "'including' in no way implies exclusivity'"). Instead, it demonstrates that "vacation residence" is within the scope of permitted recreational *uses* of the Property. That, of course, does not resolve the issue as there is no indication that the Circuit Court's ruling was dependant upon any such misapprehension.

While the Property can "only" be put to educational, recreational, agricultural, health care, and humanitarian uses, nothing in the text suggests that the Association is prohibited from collecting revenue from the permissible use of the Property. Illustrating this point, Paragraph 16 plainly permits the Association to use the Property to run a school, farm, or medical clinic. Whether the Association charges students a tuition, sells the harvest, or charges patients fees for the provision of medical treatment is merely derivative of and incidental to these uses. As is relevant here, Paragraph 16 does not limit the recreational use of the Property to persons affiliated with the Association. Nor does it prevent the Association from collecting revenue from its recreational activities. Simply, Paragraph 16 does not mandate that guests using the Property for vacation residence must be permitted to do so free of charge, if at all.

If the parties wished, they could have included a provision in the Lease prohibiting the Association from generating revenue from the otherwise permissible use of the Property. They failed to do so, and the absence of such a provision does not create an ambiguity. *See Collins v. Goetsch*, 59 Haw. 481, 487, 583 P.2d 353, 358 (1978) (In determining the meaning of language used in restrictive covenants, "the controlling factor is expressed intent, and unexpressed intent is generally 'unavailing.'").

      b.    The import of Paragraph 16's second sentence

The second sentence of Paragraph 16, however, states that "[n]o dwellings shall be constructed or used on the demised premises except for faculty, administrative staff, students and employees." The question, then, is whether the term "dwellings" in the second sentence in Paragraph 16 could reasonably be interpreted as prohibiting use of the cabins as temporary vacation residences by the general public.

A "dwelling" may simply mean "having a roof over one's head and a certain number of square meters at disposal." CHRISTIAN NORBERG-SCHULZ, THE CONCEPT OF DWELLING 12 (1985). In criminal statutes such as Chapter 708 of Hawaii Revised Statutes ("HRS"), the term is defined to mean "a building which is used or usually used by a person for lodging[,]" HAW. REV. STAT. § 708-800 (1993), and can generally refer to any "enclosed space that is used or intended for use as a human habitation." BLACK's LAW DICTIONARY 582 (9th ed. 2009) (definition of dwelling-house); *see also* HAW. REV. STAT. § 703-300 (1993) ("'Dwelling' means any building or structure, though movable or temporary, or a portion thereof, which is for the time being a home or place of lodging."); *United States v. McClenton*, 53 F.3d 584, 587 (3d Cir. 1995) (a hotel room is a "dwelling," albeit "on a transient or temporary basis[,]" for the purposes of the federal sentencing guidelines); *cf. United States v. Whitted*, 541 F.3d 480, 488 (3d Cir. 2008) (as used in the context of search-and-seizure jurisprudence, "[t]he sanctity of private dwellings, whether temporary or permanent, ordinarily gives rise to the most stringent Fourth Amendment protection" (citations and internal

quotation marks omitted)).

On the other hand, the word "dwelling" may suggest stronger connections between person, space, and time. The word "dwell," the root of the word "dwelling," has a definitive temporal aspect: to dwell is "to remain for a time" or "to live as a resident." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 389 (11th ed. 2003); BLACK'S LAW DICTIONARY 582 (9th ed. 2009) (to dwell is "[t]o reside in a place permanently or for some period <he dwelled in California for nine years>"). Whether a building is a "dwelling" could depend on the length or permanency of residence. For instance, under Rule 4 of the Hawaiʻi Rules of Civil Procedure ("HRCP"), service of process may be made upon an individual "at the individual's dwelling house or usual place of abode[.]" Haw. R. Civ. P. 4(d)(1)(A). While judges have struggled with the precise meaning of these words, courts hold that a structure is not a person's dwelling place if "a more permanent residence is shown to exist" or "if the defendant is only an occasional visitor at a particular place."[7] 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1096 (3d ed. 2002).

### c. Reading Paragraph 16's first and second sentences in concert

While, standing alone, "dwellings" could be an ambiguous term, it is unambiguous in the context of Paragraph 16. The term "vacation residence" is unambiguous — it means to reside *while on vacation*.[8] "Vacation residence" is a permitted use of the Property. Paragraph 16 explicitly states that church members may use the Property for vacation residence. The use of "dwellings" on the Property, however, is limited to faculty, administrative staff, students, and employees. It is illogical that a given use of the Property (vacation residence by church

---

[7] The word "dwelling" may also connote something more profound than a place where people sleep at night or a structure that provides some protection from the elements. "Dwelling" tends to suggest a deeper, more "meaningful relationship between man and a given environment." *See* CHRISTIAN NORBERG-SCHULZ, THE CONCEPT OF DWELLING 13 (1985).

[8] "Vacation" is defined as "a period spent away from home or business in travel or recreation." Merriam-Webster's Collegiate Dictionary 1380 (11th ed. 2003).

members) should be expressly permitted in one sentence but forbidden in the next. *Cf. Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 566-67 (9th Cir. 1988) ("The normal rule of construction, of course, is that courts must interpret contracts, if possible, so as to avoid internal conflict."); 4 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 618, at 715 (3d ed. 1961) ("An interpretation will not be given to one part of a contract which will annul another part of it . . . ."). Thus, we hold that the term "dwellings," as used in Paragraph 16, means structures used or constructed for use as primary, non-recreational residences, but not structures used or constructed for use as temporary vacation residences.

The issue presented in Count I of the Complaint is whether the Association can rent "cabins to the public on a vacation rental basis." Based on the record before us, it appears that at least some of the "cabins" were not constructed for use as "dwellings," as that term is used in Paragraph 16.[2] Furthermore, it is undisputed that the cabins were being used for vacation rentals. Thus, based on material facts in the record, the Circuit Court's decision to grant Wong's motion for partial summary judgment on Count I of the Complaint based on its interpretation of the Lease was erroneous.

That does not mean, however, that the Association is entitled to summary judgment on Count I of the Complaint. The Association is obligated on summary judgment to demonstrate its entitlement to declaratory relief as a matter of law. It failed to do so here. Thus, we hold that the Circuit Court properly denied the Association's motion for summary judgment on Count I of the Complaint.

Therefore, we vacate that portion of paragraph 1 of the Amended Final Judgment that granted judgment in favor of Wong on Count I of the Complaint and remand for further proceedings in light of our opinion.

_____

[2] That is not to say that the record gives us a clear understanding of what these cabins are. The record reveals very little about what the cabins looked like, how they were used, and who used them. These are issues that may be examined on remand.

2.   The Circuit Court did not err by failing to issue
     findings of fact and conclusions of law.

The Association contends in its second point of error that the Circuit Court erroneously failed to issue findings of fact and conclusions of law to support its summary judgment orders.  The Circuit Court did not err.  Under HRCP Rule 52(a), "findings of fact and conclusions of law are unnecessary in summary judgments.  This is because disputed issues of fact cannot be resolved on summary judgment."[10/]  *Dalton v. City & Cnty. of Honolulu*, 51 Haw. 400, 403 n.2, 462 P.2d 199, 203 n.2 (1969).  Here, since the Circuit Court disposed of the case on summary judgment, the Circuit Court was not required to issue findings of fact or conclusions of law.

3.   The Association's third point of error is moot.

The Association argues that the Circuit Court erroneously failed to expressly exclude certain evidence when it granted Wong's motion for summary judgment on Count I of the Complaint.  Because we hold that the order granting Wong's motion for summary judgment on Count I of the Complaint was in error, the issue is moot.

4.   The Circuit Court did not abuse its discretion in
     denying the Association's motion for
     reconsideration.

The Association argues in its fourth point of error that the Circuit Court erred by failing "to reconsider its ruling regarding the interpretation of the use provision of the Lease, including its failure to follow Lealaimatafao v. Woodward-Clyde Consultants, 75 Haw. 544, 556, 867 P.2d 220, 226 (1994)."  The Association further argues that the Circuit Court erred in failing to find that clear legal error is grounds for

_____

[10/]    The Supreme Court also stated, however, that "[t]rial courts are not prevented from entering conclusions of law . . . and in the present case a clear statement of the conclusions of law in each judgment would have facilitated the appeal."  *Dalton*, 51 Haw. at 403 n.2, 462 P.2d at 203 n.2.  The sentiment applies with equal force in this case.

reconsideration of an interlocutory order.[11]

Irrespective of the well-settled proper scope of a motion for reconsideration in Hawai'i, *e.g.*, *Omerod v. Heirs of Kaheananui*, 116 Hawai'i 239, 269-71, 172 P.3d 983, 1013-15 (2007), we have already held that the Circuit Court erred in granting summary judgment in favor of Wong on Count I of the Complaint on the basis of the Lease's terms. Consequently, the point of error is moot.

5. The Association waived its fifth point of error.

The Association argues that the Circuit Court erred when it failed to grant its Motion for Partial Summary Judgment on Counts I, II and IV of the Counterclaim. For the purposes of this point of error, the Association stated in its opening brief that it "relies on the arguments made in its pleadings and during oral argument and makes no further argument in this Opening Brief." This is obviously not permitted under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(a) and Rule 28(b)(7). Since this violates our rules, we will disregard the point. *Kapiolani Comm. Ctr. v. A & S P'ship*, 68 Haw. 580, 584, 723 P.2d 181, 184-85 (1986).

B. Wong's Points of Error

1. Termination of the Lease is not warranted.

Wong argues in his first point of error that he is entitled to termination of the Lease because the Association willfully violated Paragraph 16 by renting cabins to the general public. The Association argues that any violation was timely cured.

Pursuant to Paragraph 19, if the Association "shall fail faithfully to observe or perform any of the covenants herein contained and on the part of Lessee to be observed and performed, and any such default shall continue for thirty (30) days after written notice thereof is given by Lessor[,]" Wong is entitled to terminate the Lease. There is a caveat, however:

[11] The Association's October 7, 2005 motion for reconsideration raised issues other than the interpretation of the Lease's use provision. Those issues, however, are not addressed in the point of error.

> [B]efore any forfeiture shall be enforced, Lessor shall give
> written notice to Lessee of the breach constituting the
> ground of forfeiture, and Lessee shall have thirty (30) days
> from the date of such notice within which to remedy or cure
> such breach, and if such breach shall be so cured or
> remedied, then such breach shall be waived and no forfeiture
> shall be enforced for such breach, but if such breach shall
> not have been so remedied or cured within said period or
> within such additional time as Lessor may allow, then Lessor
> may enforce Lessor's rights of forfeiture.

The March 6, 2002 Letter explained the basis for the claimed default[12]:

> Shortly after the undersigned became trustee of the
> Trust, it became known that the Association had been
> conducting a commercial vacation rental operation on the
> Land since 1985, renting the cabins located thereon to the
> general public. The Association had not reported such
> income to the Lessor nor had the Association paid percentage
> rent upon such gross receipts. Such use of the Land was a
> clear violation of the use clause of the Lease, a fact that
> the Association admits. The preceding constitutes default
> by the Association under the terms of the Lease.

In addition, Wong demanded that, "on or before April 15, 2002, the Association cease all commercial vacation rental operations[.]"

On March 13, 2002, the Association sent Wong's attorney a letter stating that it would comply and cease all commercial vacation rental operations by April 15, 2002. However, in an April 2, 2002 letter to the Association's counsel, Wong's counsel stated:

> the Trust does not desire to create hardship for persons
> with vacation cabin reservations in the near term. The
> Trust will, therefore, allow the Church to honor all
> reservations for the period through October 31, 2002, if the
> reservations were made _prior_ to Mr. Wong's letter of March
> 6, 2002. This consideration is given while reserving all
> rights of the Trust in this matter. After October 31, 2002,
> the Trust expects the Church to abide by the use
> restrictions contained in the Lease.

The Association presented undisputed evidence that "[o]ther than honoring those existing reservations, rental of cabins to non-Adventist[s] ceased within 30 days after Wong's notice."

The March 6, 2002 Letter constitutes notice under the Lease. However, the undisputed evidence shows that even if the Association had misused the Property, it cured any breach within

---

[12]    Although it appears that Wong had asserted additional grounds for termination beyond the rental of cabins to the general public, Wong does not address them in his argument. Thus, we will not consider them. _See_ Haw. R. App. P. 28(b)(7).

the time allotted by the Lease. On April 2, 2002, Wong explicitly permitted the Association to honor existing reservations through October 31, 2002. And, as stated above, the evidence shows that "[o]ther than honoring those existing reservations, rental of cabins to non-Adventist[s] ceased within 30 days after Wong's notice." Wong has not demonstrated that the Association was required to make any monetary payment to cure the breach under the Lease. Thus, any potential breach of the Lease for the impermissible rental of cabins was timely cured.

Therefore, Wong is not entitled to termination of the Lease, and the Circuit Court did not err in granting the Association's motion for partial summary judgment on Count I of the Counterclaim.

> 2. Wong is not entitled to damages upon the theory presented on appeal.

In his second point of error, Wong contends that the Circuit Court erred by granting the Association's motion for partial summary judgment on Counts II and III of the Counterclaim. Count II of the Counterclaim seeks damages for breach of contract, and Count III is a stand-alone unjust-enrichment claim.

Wong argues that a trial court, sitting in equity, may grant a lessee relief against forfeiture for the breach of a covenant in a lease if the lessor "can reasonably and adequately be compensated for his injury." *See Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 613-14, 575 P.2d 869, 875–76 (1978). This argument relates solely to the *remedy* that Wong is entitled to if the Circuit Court finds there to have first been a breach of the Lease capable of raising the issue of forfeiture. That argument is misplaced here, where we hold that the Circuit Court erred in granting Wong summary judgment on Count I of the Complaint, but properly granted summary judgment against him on Count I of the Counterclaim. Therefore, Wong has not shown error.

> 3. Wong failed to argue his third point of error.

As his third point of error, Wong contends that the

Association "violated the terms of its governmental approvals by failing to institute the agricultural work-study program and by renting the cabins to members of the general public." We are unable to discern, however, anywhere in the argument section of his opening brief where Wong offered any legal argument on the issue.[13] Therefore, the point is deemed waived pursuant to HRAP 28(b)(7).

> 4. If the Circuit Court erred in failing to award Wong summary judgment on Count VI of the Complaint, the error was harmless.

On May 21, 2007, the Circuit Court dismissed Count VI of the Complaint. The dismissal functions as an adjudication on the merits. *See* Haw. R. Civ. P. 41(b)(3) (unless otherwise specified by the trial court, a dismissal is an adjudication on the merits unless it falls under HRCP 41(a) or is for lack of jurisdiction, improper venue, or failure to join a party). The Association has not appealed the dismissal. Wong has not argued that he has been harmed by this alleged error.

Therefore, even if the Circuit Court erred by not granting Wong's motion for partial summary judgment, such error would be harmless. *See Takayama v. Zera*, No. 27900, 2010 WL 973484, at *4 (Haw. Ct. App. Mar. 18, 2010) (holding that even if denial of summary judgment was erroneous, error was harmless because appellant prevailed at trial and did not allege any harm from denial of summary judgment).

C. Attorneys' Fees and Costs

Count I of the Complaint is the Association's central claim and is, as Wong concedes, the "disputed main issue."

---

[13]  Although Wong recites facts relevant to its third point of error and provides some commentary on those facts in its concise statement of the case section of his opening brief, he failed to present a legal argument attempting to demonstrate how the Circuit Court erred as a matter of law in denying his motion for summary judgment based upon plaintiff's violation of the Lease through its failure to comply with county and Land Use Commission conditions. *See Dixon v. Metro. Atlanta Rapid Transit Auth.*, 529 S.E.2d 398, 402 (Ga. Ct. App. 2000) (legal argument is, "at a minimum, a discussion of the appropriate law as applied to the relevant facts"). Furthermore, Wong's passing references to "land use documents" and Association representations made to government entities in the argument section of his opening brief are not offered to show that the Association violated terms of its governmental approvals, but to establish the parties' intent with respect to the Lease.

Thus, the Order Granting Fees and Costs and paragraph 4 of the Amended Final Judgment awarding Wong attorneys' fees and costs is vacated.

V.    CONCLUSION

The Amended Final Judgment is vacated in part and affirmed in part.  We vacate the portion of paragraph 1 of the Amended Final Judgment that pertains to Count I of the Complaint and paragraph 4 in its entirety.  We also vacate the Order Granting Fees and Costs.  We affirm in all other respects.  We remand for proceedings on Count I of the Complaint not inconsistent with this opinion.

DATED:  Honolulu, Hawaii, April 16, 2012.


On the briefs:

Michael R. Marsh,
James M. Cribley, and
Mark G. Valencia
(Case Lombardi & Pettit
a Law Corporation)
for Plaintiff-Appellant/
Cross-Appellee.

Presiding Judge

Associate Judge

Michael D. Tom and
Lyle M. Ishida
(Tom Petrus & Miller, LLLC)
for Defendant-Appellee/
Cross-Appellant.

Associate Judge